# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

**LATINA CROSBY,**                                    *

     **Plaintiff,**                                   *

**v.**                                               *

                           **CIVIL NO. JKB-20-3157**

**UNITED PARCEL SERVICE, INC.,**                     *

     **Defendant.**                                   *

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

## MEMORANDUM

On November 3, 2020, Latina Crosby sued Defendant United Parcel Service, Inc. ("UPS") alleging discrimination and retaliation in violation of state and federal law. (ECF No. 1.) Presently pending before the Court is Defendant's unopposed Motion for Summary Judgment. (ECF No. 48.) For the following reasons, an Order shall issue granting that Motion.

### I.     *Background*

Beginning in 2007, and at all times relevant to this case, Plaintiff worked as a delivery driver for Defendant in Maryland. (*See* Crosby Dep. at 19–20, Mot. Summ. J. Ex. 1, ECF No. 48-3.) In that role, she was a member of the International Brotherhood of Teamsters Union, Local 639, (Crosby Dep. at 67; *see also* Peyton Decl. ¶¶ 18–20, Mot. Summ. J. Ex. 24, ECF No. 48-28), and her employment relationship with Defendant was governed by a Collective Bargaining Agreement and Regional Supplement (collectively, the "Union Agreement"). (*See* ECF Nos. 48-6, 48-7.) Plaintiff's claims in this case relate to several disciplinary actions taken against her between January 11, 2018 and December 10, 2020 that she claims were discriminatory based on her race and gender, retaliatory based on her prior protected activity, or both.

1

### A. Plaintiff's Union Agreement

The disciplinary actions at issue in this case are predominantly discharges issued by Plaintiff's supervisors under the Union Agreement. Under Article 7 or Article 50 of the Union Agreement, Plaintiff's supervisors have the right to issue discharges to employees. Article 7 provides that "[e]xcept in cases involving cardinal infractions under the applicable Supplement, Rider or Addendum, an employee to be discharged or suspended shall be allowed to remain on the job, without loss of pay, unless and until the discharge or suspension is sustained under the grievance procedure." (ECF No. 48-6 at 4–5.) Article 50 further requires that the employer "shall give at least one warning notice of a complaint against such employee to the employee, in writing, and a copy of the same to the Union" before suspending or discharging an employee for an ordinary infraction. (ECF No. 48-7 at 5.) Article 50, however, carves out several more severe offenses, which do not require prior written notice before suspension or termination: "dishonesty, [alcohol or drug use], recklessness resulting in a serious accident, . . . or the carrying of unauthorized passengers[.]" (*Id.*) These more serious offenses also constitute the "cardinal infractions" referred to in Article 7 for which suspension or termination can be non-working and unpaid pending the outcome of the grievance procedure. (*See* Peyton Decl. ¶ 31.)

The pending Motion adopts the nomenclature "Article 7 Discharge" to refer to suspensions with pay for minor infractions and "Article 50 Discharge" for more severe misconduct that results in unpaid suspension or termination, and this Court does the same. (*See* Mot. Summ. J. Mem. Supp. at 2, ECF No. 48-2.)

### A. Plaintiff's Disciplinary and Grievance History

Plaintiff's claims, as alleged in the First Amended Complaint, relate to disciplinary discharges she received between 2018 and 2020, as well as other discriminatory treatment she

experienced while working for Defendant during that time period.  (*See generally* First Amended

Complaint ("FAC"), ECF No. 14.)  The first such discharge occurred on January 12, 2018, when

Plaintiff was suspended for one day for "fail[ing] to follow proper instructions from the

management team, which resulted in a service failure." (ECF No. 48-9.)[1]  Then, on January 29,

2018 Plaintiff received an Article 50 Discharge from her direct supervisor, Tyler Lamper for

"purposefully [bringing] back a package[, which] UPS considers [ ] an act of dishonesty." (ECF

No. 48-10; *see also* ECF No. 48-12 at 3.)  Following grievance procedures, this termination was

reduced to a one-day suspension on February 5, 2018.  (ECF No. 48-11.)  On February 7, 2018,

Plaintiff filed an internal complaint where she averred that Lamper was "targeting her and

discriminating against her because she is female." (ECF No. 48-12 at 3.)  Defendant's internal

investigation concluded that this claim was "[u]nsubstantiated." (ECF No. 48-12 at 4.)

Plaintiff was next disciplined on May 10, 2018, when she received an official warning for

"fail[ing] to follow proper methods, policies, procedures, and instructions, which resulted in a

service failure." (ECF No. 48-13.)  It does not appear that Plaintiff was penalized for this infraction

beyond the issuance of the warning.  Five months later, on October 18, 2018, Plaintiff submitted

an additional internal complaint, alleging that Lamper, "has been discriminating against [Plaintiff]

at the workplace." (ECF No. 48-14 at 2.)  Specifically, that complaint alleged that Lamper would

"send other drivers home before sending [Plaintiff home, that] she is the senior driver [and that

w]henver [Plaintiff] asked [Lamper] why he is behaving this way, he will say because he can."

(*Id.*)  Plaintiff also asserted that she "[felt] that [Lamper] is discriminating against her because she

is an African American female."  (*Id.*)  Defendant's follow-up documentation notes that Plaintiff's

claim was "unsubstantiated" because "[n]o evidence was found showing discrimination" but that

---

[1] It is unclear whether this was an Article 7 or Article 50 Discharge.

unspecified disciplinary action was taken on the basis of Plaintiff's complaint,[2] and that Plaintiff felt her concern had been resolved. (*See* ECF No. 48-15 at 4.)

On May 17, 2019, Plaintiff received an Article 50 termination for "falsifying company records . . . by altering [her] start time" on several work days. (ECF No. 48-16.) On May 21, 2019, a meeting was held regarding Plaintiff's termination where she "commit[ed] to be honest in [her] dealing with the Company" and where her termination was again reduced to a one-day suspension. (ECF No. 48-17.) Following this incident, Plaintiff was not disciplined for the remainder of 2019. Sometime in 2019, Lamper was replaced as Plaintiff's direct supervisor by Kathrina Collins. (*See* Peyton Decl. ¶ 8.)

On March 26, 2020, Plaintiff filed a grievance against Tracy Parks, her Division Supervisor, for an "unjust article (7)" though the underlying disciplinary action is not included in the record and appears to not have been recorded or acted upon. (*See* ECF No. 48-18; *see also* Mot. Summ. J. Mem. Supp. at 4.) This grievance was marked "unresolved" following a meeting on April 3, 2020 and "resolved" following a meeting on June 24, 2020. (ECF No. 48-18.) Between these meetings, on May 22, 2020, Plaintiff was issued an Article 50 Discharge for "dishonesty, failure to follow company methods, policies, procedures, and instructions, and [her] overall poor work record." (ECF No. 48-19.)

On June 8, 2020, Plaintiff filed a charge with the U.S. Equal Employment Opportunity Commission ("EEOC") alleging retaliation. (*See* FAC ¶ 47.)

Plaintiff returned to work for Defendant "on or around June 25, 2020" (FAC ¶ 50) and, on June 26, 2020, she received an Article 7 Discharge for "violat[ing] UPS appearance and uniform guidelines even after having the policy reviewed with [her] by [her] steward, business agent, and

---

[2] The relevant document simply states with respect to the results of the investigation: "Primary outcome: Unsubstantiated; Disciplinary Action Taken: Yes." (*See* ECF No. 48-15 at 4.)

labor manager." (ECF No. 48-20.) A handwritten note on the discharge documentation reads "Tracy Parks told Kathrina C. to give me a article 7, for my hair." (*Id.*)

On August 6, 2020, the EEOC issued Plaintiff a Right to Sue letter, and on November 3, 2020, she filed her Complaint in this matter. (*See* ECF No. 1 ¶ 6.)

A month later, on December 3, 2020, Plaintiff again filed an internal grievance for "[c]ontinued harassment and racial discrimination by UPS management Tracy Parks and Cat." (ECF No. 48-21.) A week later, on December 10, 2020, Plaintiff received an Article 50 Discharge for "dishonesty, job abandonment, failure to follow company methods, policies, procedures, and instructions, and [ ] overall unacceptable work record." (ECF No. 48-22.) That same day, Plaintiff filed a grievance for "unjust termination." (ECF No. 48-23.) That grievance was resolved, and Plaintiff was reinstated without backpay on March 9, 2021. (FAC ¶ 55.)

## II.    *Legal Standard*

A party seeking summary judgment must show "that there is no genuine dispute as to any material fact" and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If a party carries this burden, then the court will award summary judgment unless the opposing party can identify specific facts, beyond the allegations or denials in the pleadings, that show a genuine issue for trial. Fed. R. Civ. P. 56(e). If sufficient evidence exists for a reasonable jury to render a verdict in favor of the party opposing the motion, then a genuine dispute of material fact is presented, and summary judgment should be denied. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, the "mere existence of a scintilla of evidence in support of the [opposing party's] position" is insufficient to defeat a motion for summary judgment. *Id.* at 252. To carry these respective

burdens, each party must support its assertions by citing specific evidence from the record. Fed. R. Civ. P. 56(c)(1)(A). The court will assess the merits of a summary judgment motion, and any responses, by viewing all facts and making reasonable inferences in the light most favorable to the party opposing the motion. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *see also Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008).

"Although the failure of a party to respond to a summary judgment motion may leave uncontroverted those facts established by the motion, the moving party must still show that the uncontroverted facts entitle the party to 'a judgment as a matter of law' [and the] failure to respond to the motion does not automatically accomplish this." *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993). Rather, the Court is obligated to "thoroughly analyze[] the motion . . . and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law." *Maryland v. Univ. Elec., Inc.*, 729 F.3d 370, 380 (4th Cir. 2013) (internal quotations marks and citation omitted).

### III.    Analysis

Defendant argues that the undisputed facts entitle it to judgment as a matter of law with respect to all six of Plaintiff's claims, which collectively allege race discrimination, sex discrimination, and retaliation in violation of Title VII, 42 U.S.C. § 1981, and the Maryland Fair Employment Practices Act (the "FEPA"). (*See* FAC ¶¶ 57–109.) As Plaintiff provides no direct evidence of discriminatory or retaliatory animus, all six of Plaintiff's claims are assessed under the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Foster v. Univ. Md.-E. Shore*, 787 F.3d 243, 249 (4th Cir. 2015) ("Title VII prohibits an employer from both (i) discriminating against an employee on the basis of sex, and (ii) retaliating against an employee for complaining about prior discrimination or retaliation . . . Plaintiffs may

6

prove these violations either through direct and indirect evidence of [ ] animus, or through the burden-shifting framework."); *see also Sanders v. Tikras Tech. Sols. Corp.*, 725 F. App'x 228, 229 (4th Cir. 2018) (citations omitted) ("The *McDonnell Douglas* framework was initially developed for Title VII discrimination cases, but since the *McDonnell Douglas* decision, the framework has been held to apply in discrimination cases arising under § 1981, and in retaliation cases under Title VII and § 1981[.]"); *Belfiore v. Merchant Link, LLC*, 180 A.3d 230, 237 (Md. Ct. Spec. App. 2018) (applying *McDonnell Douglas* framework to disparate treatment claim under Maryland law); *Nana-Akua Takyiwaa Shalom v. Payless Shoesource Worldwide, Inc.*, 921 F. Supp. 2d 470, 486 (D. Md. 2013) ("Plaintiff's claims of retaliation under Title VII, § 1981 and FEPA are also analyzed under the *McDonnell Douglas* framework.").

"Under the burden-shifting framework, a plaintiff must first offer a prima facie case." *Sempowich v. Tactile Sys. Tech.*, 19 F.4th 643, 649 (4th Cir. 2021). To establish a prima facie case of disparate treatment, a plaintiff must show: "(1) she is a member of a protected class; (2) her employer took an adverse action against her; (3) she had been fulfilling her employer's legitimate expectations at the time of the adverse action; and (4) the adverse action occurred under circumstances that raise a reasonable inference of unlawful discrimination[.]" *Id.* at 649–50. For retaliation, a prima facie case requires showing: "(1) that [plaintiff] engaged in protected activity, (2) that her employer took adverse action against her, and (3) that a causal relationship existed between the protected activity and the adverse employment activity." *Foster*, 787 F.3d at 250.

If a plaintiff offers a prima facie case, "the burden shifts to the employer to put forth a nondiscriminatory explanation for its actions." *Sempowich*, 19 F.4th at 650 (citing *Lettieri v. Equant*, 478 F.3d 640, 646 (4th Cir. 2007)). Should both of these initial burdens be satisfied, "the burden shifts back to the plaintiff to rebut the employer's explanation was 'actually a pretext for

discrimination.'" *Id.* (quoting *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004) (en banc)). Here, Defendant argues that it is entitled to summary judgment because Plaintiff fails to establish: (1) a prima facie case for discrimination or retaliation or (2) that Defendant's proffered explanation was pretextual. The Court concludes that the record before it fails to establish a prima facie case for three reasons.

### A. *Plaintiff's Admissions*

As Defendant points out, the largest flaw in Plaintiff's case are her own admissions that the discrimination and retaliation she experienced during her employment were unrelated to her race or gender. When asked at her deposition who had discriminated and retaliated against her, Plaintiff identified two key supervisors: Allen Curry (the Center Manager) and Tracy Parks (the Division Manager). (*See* Crosby Dep. at 29, 56.) However, Plaintiff further testified that Curry had discriminated against and retaliated against her because she had refused to give to a charity, United Way, when he had solicited funds for that organization. (*See id.* at 34, 56.) She also testified that her relationship with Parks, while initially cordial, soured after Plaintiff reported alleged misconduct by UPS managers in the posting of delivery routes for selection. (*See* FAC ¶ 29; Crosby Dep. at 41–42, 50.)[3] Last, though Plaintiff testified that other supervisors discriminated against her, she explained that, in her view, this animus derived from relationships those supervisors had with Curry and Parks. (*See* Crosby Dep. at 40, 78 ("Tyler [Lamper] works under Allen [Curry]. So, in my mind, I'm just thinking that, you know, everything is coming from Allen[.]").) Plaintiff's "own repeated admission" that the reason for Defendant's conduct was not

---

[3] There is no evidence in the record that suggests that management's attempts to influence the selection of routes by drivers was related to discrimination on the basis of race or gender. (*Cf.* FAC ¶ 29 ("On or around February 2020, UPS managers revealed a set of routes for drivers to choose from. [Plaintiff] noticed that the drivers had less routes to choose from than usual. She reported the discrepancy to the union and later discovered that her managers attempted to hide two routes so that other drivers could select them.").)

"race or gender discrimination" means that she fails to establish a prima facie case. *See Lightner v. City of Wilmington, N.C.*, 545 F.3d 260, 263–64 (4th Cir. 2008).

As the Fourth Circuit explained in *Lightner*, a plaintiff cannot take statutes "aimed at discrete forms of discrimination and turn [them] into [ ] general whistleblower statute[s]." *Id.* at 264. As in that case, Plaintiff's repeated assertions that the grounds for her improper treatment were unrelated to her race and gender "completely undermine" her ability to establish a prima facie case. *Id.* at 265. While Plaintiff's treatment may have been wrongful, it was not wrongful in a way that is protected by the statutes she invokes in this case. *Id.* at 264 (concluding that admission of non-discriminatory purpose meant that plaintiff's "suspension, however wrongful, is not actionable under Title VII and the defendants are entitled to summary judgment").

### B. Contemporaneous Documentation of Grounds for Adverse Employment Actions

Plaintiff's prima facie case is further damaged by the substantial documentation providing non-discriminatory reasons for each adverse employment action taken against her. This documentation consistently provides valid, contemporaneous explanations for Defendant's allegedly discriminatory or retaliatory conduct. (*See, e.g.*, ECF No. 48-9 (documenting a one-day suspension for "fail[ure] to follow proper instructions from the management team, which resulted in a service failure"); ECF No. 48-16 (issuing a discharge for dishonesty based on "falsifying company records [by] being dishonest with the company by altering your start time").) Although this documentation may more squarely fit within the next step of the *McDonnell Douglas* test, there is substantial authority that it may also be considered in determining whether a plaintiff has satisfactorily established a prima facie case. *See Shun-Lung Chao v. IBM Corp.*, 424 F. App'x 259, 261 (4th Cir. 2011) ("The record is replete with examples of Chao's documented insubordination, costly technical errors, and poor performance reviews. Thus, we agree with the

9

district court's conclusion that Chao has not made out a prima facie case. Accordingly, summary judgment was proper."); *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 520 (4th Cir. 2006) (emphasis added) ("In light of Warch's own admissions that he was not replaced, *OCIC's well-documented problems with Warch's performance*, and the absence of any evidence showing that he was the victim of a reduction in force, much less a discriminatory one, no reasonable jury could find that Warch could establish the fourth element of his prima facie case."); *Hannah P. v. Coats*, 916 F.3d 327, 343 (4th Cir. 2019) (affirming summary judgment based on contemporaneously documented non-discriminatory concerns with employee's performance).[4] In addition to contemporaneously documenting the grounds for various adverse employment actions, the record also establishes that, when Plaintiff was cited for violating a policy, meetings were held between Plaintiff, a union representative, and one of Plaintiff's supervisors to discuss these issues and negotiate an appropriate penalty. (*See, e.g.*, ECF No. 48-10 (issuing Plaintiff an Article 50 Discharge for "an act of dishonesty"); ECF No. 48-11 (revising this Discharge down to a one-day suspension).) While Defendant's representative at many of these meetings were supervisors that Plaintiff alleges discriminated against her, there is no evidence that these meetings were pretextual or that the conclusions reached between Plaintiff, her union representative, and her supervisor were otherwise tainted by improper animus.

### C. Comparators

To the extent that there is evidence affirmatively supporting a prima facie case, it is limited to an argument that Plaintiff may have been singled out for not conforming to the UPS Uniform

---

[4] Indeed, Defendant also argues that this documentation meets its burden at the second step of the *McDonnell Douglas* analysis and that Plaintiff has not established that these documented reasons were pretextual. (*See* Mot. Summ. J. Mem. Supp. at 16–17.) Because the Court concludes that Plaintiff fails to establish a prima facie case, it does not address these further arguments in favor of summary judgment though that analysis would largely track the prima facie case assessment.

and Personal Appearance Standards which require that "[h]air length must not create a safety concern[,]" and that "[h]air longer than shoulder length must be worn up, under UPS approved headwear or in a style such as a twist or a knot." (ECF No. 48-5.) Specifically, while Plaintiff received warnings and an Article 7 Discharge due to the length of her hair, she provides photographs that she avers show "numerous drivers with hair past their shoulders, all women that I've mentioned are all white, [and] not one complaint about their hair." (ECF No. 48-25; *see also* ECF No. 48-20 (Article 7 Discharge for "violat[ing] the UPS appearance and uniform guidelines"); FAC ¶¶ 50–51.)   This comparator evidence is insufficient to establish a prima facie case, particularly in light of the strong countervailing evidence. *See Lightner*, 545 F.3d at 265 (noting that "any inference as to race or gender that could potentially be drawn from the disparate treatment [between plaintiff and comparator] are completely undermined by the plaintiff's admission that he was suspended to stop his internal investigation").

"Where a plaintiff attempts to rely on comparator evidence to establish circumstances giving rise to an inference of unlawful discrimination [ ] 'the similarity between comparators must be clearly established in order to be meaningful.'" *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 748 (4th Cir. 2017) (quoting *Lightner*, 545 F.3d at 265).   This requires there to be "sufficient commonalities on the key variables between the plaintiff and the would-be comparator to allow the type of comparison that, taken together with the other prima facie evidence, would allow a jury to reach an inference of discrimination." *Id.* (quoting *Eaton v. Ind. Dep't of Corr.*, 657 F.3d 551, 556 (7th Cir. 2011)).   Here, the photographs that Plaintiff provides do not provide enough points of comparison to substantiate Plaintiff's otherwise deficient prima facie case.   In particular, the record establishes that Plaintiff was disciplined for *repeatedly* wearing her hair in violation of Defendant's policies. (*See* Crosby Dep. at 48 ("Q: Are you wearing your shoulder-

11

length hair down? A. No. It was in a ponytail. Always been in a ponytail. Q: Was it in a low ponytail or a high ponytail. A: A low one."); ECF No. 48-20 ("On June 26, 2020, you violated the UPS appearance and uniform guidelines even after having the policy reviewed with you by your steward, business agent, and labor manager.").) The photographs of other drivers do not sufficiently establish that those drivers consistently wore their hair in a non-conforming manner or provide any other data points to "clearly establish" the similarity between them and Plaintiff. *Lightner*, 545 F.3d at 265. The limited benefit of this comparator evidence fails to overcome the strong countervailing evidence and establish a prima facie case of discrimination or retaliation.

In sum, the record before the Court establishes that there was significant, contemporaneous documentation establishing that the adverse employment actions were due to Plaintiff's violations of Defendant's policies, with discipline negotiated between Plaintiff, her union, and her supervisors. In contrast, Plaintiff's affirmative case is made on comparator evidence that is of limited utility and addresses only some of the disciplinary actions taken against Plaintiff. Most problematic for Plaintiff's prima facie case, however, is her own admissions that—to the extent she was unfairly disciplined—the animus behind these decisions was not based on characteristics protected by Title VII, § 1981, or the FEPA. This means that, even to the extent Plaintiff has established that her treatment was wrongful, she has not established that it was not wrongful in a way that is protected by the statutes she invokes in this case. *Lightner*, 545 F.3d at 264 (concluding that admission of non-discriminatory purpose meant that plaintiff's "suspension, however wrongful, is not actionable under Title VII and the defendants are entitled to summary judgment").

Taken together, the Court concludes that no reasonable factfinder could find that Plaintiff has established a prima facie case for discrimination or retaliation under any of these statutes. In elemental terms, the Court finds that—viewing the evidence in the light most favorable to

12

Plaintiff—no reasonable factfinder could conclude that "the adverse action occurred under circumstances that raise a *reasonable inference* of unlawful discrimination" for her discrimination claims, *Sempowich*, 19 F.4th at 649–50 (emphasis added), or "that a *causal relationship existed* between the protected activity and the adverse employment activity" with respect to her retaliation claims. *Foster*, 787 F.3d at 250 (emphasis added). This failure to establish a prima facie case entitles Defendant to summary judgment.

### IV.    Conclusion

For the foregoing reasons, a separate Order shall issue granting Defendant's Motion for Summary Judgment (ECF No. 48).


DATED this  28  day of June, 2022.


BY THE COURT:

James K. Bredar
Chief Judge

13